DEANGELO D. LOBLEY,

                Plaintiff,

v.                                                       Case No. 18-cv-812-pp

TOUKAO YANG, LT. DANIEL CUSHING,
and MICHAEL COLE,

                Defendants.

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS ON EXHAUSTION GROUNDS (DKT. NO. 47)**

      Deangelo D. Lobley, who is incarcerated at the Green Bay Correctional Institution, filed this case alleging that the defendants violated his rights under federal law. Dkt. No. 1. Magistrate Judge Nancy Joseph screened the amended complaint and allowed the plaintiff to proceed on the following claims: (1) an excessive force claim against defendant Toukao Yang; (2) a retaliation claim against Yang based on allegations that Yang falsely accused the plaintiff of stealing chips in retaliation for the plaintiff's complaint to defendant Daniel Cushing about Yang's alleged assault on the plaintiff; (3) a retaliation claim against Yang based on allegations that Yang engaged in a campaign of harassment against the plaintiff in retaliation for the plaintiff's complaints to Lt. Cushing and for filing this case; (4) a retaliation claim against Cushing for the allegedly falsified theft charge and placement in temporary lock-up; and (5) a retaliation claim against defendant Michael Cole for not giving the plaintiff

1

his job or single cell back when he was released from segregation. Dkt. No. 27 at 3-4.

On November 8, 2019, the defendants filed a motion for summary judgment on exhaustion grounds as to the plaintiff's retaliation claims. Dkt. No. 47. The defendants' motion is fully briefed[1] and the court will grant the motion in part.

## I. Facts

The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

On April 28, 2017, the plaintiff reached into the officer's secure workstation at Green Bay Correctional Institution, and defendant Officer Yang slapped his arm. Dkt. No. 63 at ¶3. The plaintiff maintains that he reached into the officer's secure workstation to place a pass in the wire basket that sits at the front of the station and that Officer Yang used excessive force when he struck the plaintiff's arm.[2] Id. at ¶4. Officer Yang maintains that the plaintiff reached farther into the workstation than necessary to place a pass in the

---

[1] The defendants' brief in support of their summary judgment motion references proposed findings of fact, but they did not file any proposed findings of fact in support of their summary judgment motion. Judge Joseph directed the defendants to file their proposed findings of fact and gave the plaintiff the opportunity to file a supplemental response. Dkt. No. 62. The defendants filed the proposed findings of fact, dkt. no. 63, the plaintiff filed a supplemental response, dkt. no. 66, the defendants filed a supplemental reply, dkt. no. 67, and the plaintiff filed a response to the plaintiff's proposed findings of fact, dkt. no. 68.

[2] In the amended complaint, the plaintiff alleges that Yang "slammed Plaintiff's arm forcefully causing his arm to hit the officer's cage, leaving a large vicious bruise[.]" Dkt. No. 28 at 3.

2

basket, that he felt concerned the plaintiff was reaching for items in the station and that he made appropriate contact with the plaintiff's arm. Id. at ¶5. After the incident, the plaintiff was placed in temporary lock up in the restrictive housing unit. Id. at ¶6.

The plaintiff submitted three inmate complaints arguably relevant to his claims. Dkt. No. 63 at ¶9. First, on April 28, 2017, the plaintiff submitted Inmate Complaint No. GBCI-2017-11396, in which he alleged:

> Me, an Inmate (Michael Moffett) was coming back from a pass, an upon giving my pass back to C.O. Yang I reach my arm in to drop it, C.O. Yang then smack my arm (real hard) say don't put yo arm throu here.
>
> I ask to talk with a whiteshirt and one was call, I then told him what happen and I was told to go back to the cell, an that the camera will be look at.
>
> 5 minutes later a C.O. came to take pi[ctures] of my arm, then 2 minutes later my door open for me to go to the rutundra, I was handcuff to seg.
>
> I am writing this ICE because I was assaulted (smack hard on the arm) by a C.O. (Yang) an brought to seg because Yang said I tried to steal his bag of chips. Inmate Michael Moffett was right there when all this went down.

Id. at ¶¶10-11. The institution complaint examiner recommended dismissal, because Lieutenant Daniel Cushing already was addressing the issue and there was "no need to conduct a parallel investigation." Id. at ¶13. The reviewing authority dismissed the plaintiff's inmate complaint. Id. at ¶14. The plaintiff filed an appeal and the corrections complaint examiner recommended dismissal Id. The Office of the Secretary dismissed the plaintiff's appeal on June 1, 2017. Id.

3

Second, on May 20, 2018, the plaintiff submitted Inmate Complaint No. GBCI-2018-11258, in which he alleged:

> On the above date and time, I was moved to the South Cell House for school instead of allowed to remain in the north and attend to school, due to having a SPN and a current law suit pending in the Federal Eastern District Court from whereas, when I was previously housed in the south, Officer Yang battered complainant thus, when complainant is around C/O Yang he automatically has a fear and phobia that he and other staff will attempt to do bodily harm against me or that he will do something that will place me in the hole. The last time complainant was house in the south cell house, Yang told me to pack my shit, and move to the top bunk. I was then asked if I was going to follow orders. I responded to him to not talk to me in that manner as I am not your child, and closed my door. I was then met by a white shirt who directed me to the rotunda and placed me in the segregation unit for not getting on the top bunk. It should be noted at this time no one was housed in the cell with complainant at the time of this occurrence, but that it was done in harassment and in retaliation for complaining to his supervisors of his assaulting me.
>
> Further, he has called me fags and other names asking other inmates why they want to be housed with a gump/fag (prison lingo) which has created a problem where inmates do not want to be celled with me because of such statements. I have repeatedly let it be known that each time I am house in the south, I end up in segregation due to Yang or other co-workers on his behalf.

Dkt. No. 63 at ¶¶15-16. The day after the plaintiff submitted the inmate complaint, the institution complaint examiner recommended dismissal, noting that the plaintiff's "SPN was investigated and disapproved," that an "inmate's housing is an administrative decision" that requires consideration of "several elements," that the plaintiff's cell met all requirements and that no "violations [had] occurred." Id. at ¶17. That same day (May 21, 2018), the reviewing authority dismissed the plaintiff's complaint. Id. at ¶18. The plaintiff received a

4

copy of the decision, which notified him that he could appeal to the corrections complaint examiner within fourteen days. Id. The plaintiff did not appeal. Id.

On June 20, 2018, the plaintiff submitted Inmate Complaint No. GBCI-2018-13516, in which he alleged:

> I have a lawsuit pending on Seg Yang on a lot of attempts Seg Yang telling inmates I'm gay and that every time I get a celle he'll tell them I'm gay. On 5.32.18 I wrote a ICE complaining about my safety [unintelligible] days later an inmate jump on me and said Yang told him I was putting his name in some gay shit, I was sent to seg an let out the same day. I'm in seg now and I'm not getting any of my phone calls and he calls me gay when he works.

Dkt. No. 63 at ¶¶20-21. Due to the nature of the plaintiff's allegations, the institution complaint examiner provided the plaintiff with a copy of Wis. Admin. Code §DOC 303.32 (Lying About an Employee) and a copy of DAI 310.00.01 (Inmate Complaints Regarding Staff Misconduct). Id. at ¶22. The institution complaint examiner notified the plaintiff that no further information would be given to him because "the investigative process is regulated by state law (which protects the privacy and due process rights of staff)." Id. The plaintiff indicated via his signature that he "chose to pursue the complaint and waive confidentiality under DOC. 310.16(5)," and he "provided a detailed written description of the events":

> [A]round the week of 6/17/18 – 6/20 Serg Yang was doing training for the rookie C/Os at the [RHSU], note that Yang does not work here ([RHSU]) doing a round on the 300 wing Serg Yang stop at another inmate door an started talkin to him, [stating] "Oh your [neighbor] Gay" I then said I'm ICE that, his last word was "you are"

Id. at ¶23. The institution complaint examiner verbally instructed the plaintiff to appeal any dismissal of his complaint so he had reassurance that his

5

complaint was investigated under DAI 310.00.01 and so he would exhaust his administrative remedies. Id.

On July 2, 2018 the institution complaint examiner recommended that the plaintiff's complaint "be dismissed, with the modification that it be further processed pursuant to the applicable personnel rules and agreements pursuant to DAI Policy 310.00.01." Dkt. No. 63 at ¶25. The institution complaint examiner indicated that "no further action [would] be taken by this office." Id. The reviewing authority dismissed the plaintiff's complaint on July 2, 2018. Id. at ¶26. The plaintiff received written notice of the dismissal, which instructed him that he could appeal an adverse decision: "A complainant dissatisfied with a decision may, within 14 days after the date of the decision, appeal that decision by filing a written request with the Corrections Complaint Examiner on form DOC-405 (DOC 310.12, Wis. Adm. Code)." Id. The plaintiff did not appeal. Id.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A

dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. <u>Exhaustion of Administrative Remedies Law</u>

The Prison Litigation Reform Act (PLRA) provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

7

wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The exhaustion requirement is interpreted strictly and a "prisoner must comply with the specific procedures and deadlines established by the prison's policy." Pyles v. Nwaobasi, 829 F.3d 860, 864 (7th Cir. 2016) (quoting King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015)). But "[r]emedies that are genuinely unavailable or nonexistent need not be exhausted." Id. Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

Wisconsin has implemented the Inmate Complaint Review System (ICRS)[3] under which inmate grievances concerning prison conditions or the actions of prison officials are "expeditiously raised, investigated and decided." Wis. Admin. Code §DOC 310.01(1).[4] Under the ICRS, an inmate must file a complaint within fourteen days after the occurrence giving rise to the

---

[3] On April 1, 2018, the Wisconsin Department of Corrections repealed and replaced Wis. Admin. Code ch. DOC 310. The inmate complaint the plaintiff filed in 2017 (GBCI-2017-11396) falls under the prior version of the ICRS (cited in footnotes), while the current version of the ICRS governs the inmate complaints he filed in 2018 (cited in text).

[4] Wis. Admin. Code §DOC 310.01 (2002).

8

complaint, unless good cause exists to excuse a delay. Wis. Admin. Code §DOC 310.07(2).[5]

Once an inmate files a complaint, the institution complaint examiner must review and acknowledge the complaint. Wis. Admin. Code §DOC 310.10(4).[6] Upon acceptance, the institution complaint examiner should either reject the complaint for one of the listed reasons or send a recommendation to the appropriate reviewing authority. Wis. Admin. Code §§DOC 310.10(10), (6).[7]

If the institution complaint examiner rejects the complaint, the inmate "may appeal" "within 10 days" to the "appropriate reviewing authority." Wis. Admin. Code §DOC 310.10(10).[8] The reviewing authority must make a decision to affirm or dismiss the complaint in whole or in part or return the complaint to the institution complaint examiner. Wis. Admin. Code §§DOC 310.11(1), (2).[9]

If the reviewing authority dismisses the complaint, the inmate "may appeal" to the corrections complaint examiner within a certain timeframe. Wis.

---

[5] Wis. Admin. Code §DOC 310.09(6) (2002).

[6] Wis. Admin. Code §DOC 310.11(2) (2002).

[7] Wis. Admin. Code §§DOC 310.11(4), (5) (2002).

[8] Wis. Admin. Code §DOC 310.11(6) (2002).

[9] Wis. Admin. Code §§DOC 310.11(6), 310.12 (2002).

9

Admin. Code §DOC 310.12(1).[10] The corrections complaint examiner must recommend a decision to the office of the secretary. Wis. Admin. Code §DOC 310.12(9).[11]

The secretary then must "make a decision" following receipt of the corrections complaint examiner's recommendation. Wis. Admin. Code §DOC 310.13(1).[12] The secretary must accept or reject the corrections complaint examiner's recommendation, in whole or in part, or return the appeal to the corrections complaint examiner for further investigation. Wis. Admin. Code §DOC 310.13(2).[13]

C.  Discussion

The defendants contend that the plaintiff failed to exhaust administrative remedies for his retaliation claims. Dkt. No. 48 at 15. In response to the defendants' motion, the plaintiff agrees that his retaliation claims against Cushing and Cole should be dismissed on exhaustion grounds. Dkt. No. 58 at 10, 11. The court will grant the defendants' motion for summary judgment as to the plaintiff's claims against Cushing and Cole. On the other hand, the plaintiff contends that he *has* exhausted his administrative remedies as to his two retaliation claims against Yang.

---

[10] Wis. Admin. Code §DOC 310.13(1) (2002).

[11] Wis. Admin. Code §DOC 310.13(6) (2002).

[12] Wis. Admin. Code §DOC 310.14(1) (2002).

[13] Wis. Admin. Code §DOC 310.14(2) (2002).

10

### 1. *First Retaliation Claim Against Yang*

The defendants argue that the plaintiff failed to exhaust his claim that Officer Yang falsely alleged that the plaintiff stole chips in retaliation for the plaintiff complaining to Cushing about Yang's alleged assault on the plaintiff. Dkt. No. 48 at 15. According to the defendants, the plaintiff's Inmate Complaint No. GBCI-2017-11396, in which he alleged, "I am writing this ICE because I was assaulted (smack hard on that arm) by a C.O. (Yang) and brought to Seg because Yang said I tried to steal his bag of chips," did not exhaust the retaliation claim because it did not identify the protected conduct that provoked the retaliation. Id.

The plaintiff contends that his Inmate Complaint No. GBCI-2017-11396 exhausted this claim "in scope" because it alerted prison officials to the nature of the wrong for which he sought redress. Dkt. No. 58 at 9. In his supplemental response, the plaintiff reiterates that his inmate complaint objected intelligibly to a shortcoming and that it alerted prison officials to his retaliation claim. Dkt. No. 66 at 3-4. He also states that prison officials could have rejected the inmate complaint because it contains two issues—his excessive force and retaliation allegations—but argues that because they did not reject it, the plaintiff may now proceed with both claims. Id.

For exhaustion purposes, the PLRA requires prisoners to provide a prison with "notice of, and an opportunity to correct, a problem." Price v. Friedrich, 816 F. App'x 8, 10 (7th Cir. 2020) (quoting Schillinger v. Kiley, 954 F.3d 990, 995-96 (7th Cir. 2020)); see also Turley v. Rednour, 729 F.3d 645,

11

650 (7th Cir. 2013)); Jones v. Bock, 549 U.S. 199, 219 (2007). The plaintiff's inmate complaint does not identify the alleged protected conduct, *i.e.*, that Yang allegedly retaliated against the plaintiff because he complained to Cushing. The inmate complaint also does not allege that Yang falsely accused the plaintiff of stealing chips because he complained to Cushing. The plaintiff's failure to include this information deprived prison officials of the opportunity to address the situation; the plaintiff did not "clearly identif[y]" the issue, as required by Wis. Admin Code §DOC 310.07(5).[14] See Schillinger, 954 F.3d at 995; Price v. Friedrich, 816 F. App'x at 10 (prisoner's retaliation claim not exhausted because grievances did not alert prison officials to prisoner's belief that legal materials were destroyed in retaliation for grievances prisoner filed). The plaintiff has not exhausted this claim.

2.   *Second Retaliation Claim Against Yang*

The defendants assert that the plaintiff failed to exhaust his claim that Officer Yang engaged in a campaign of harassment against him in retaliation for the plaintiff complaining to Lieutenant Cushing and filing an inmate complaint and a lawsuit. Dkt. No. 48 at 18. The defendants first argue that the plaintiff failed to exhaust his campaign of harassment claim because he did not appeal the dismissal of Inmate Complaint No. GBCI-2018-11258 related to that claim. Id. The defendants also contend that the plaintiff's Inmate Complaint No. GBCI-2018-13516 is not related to the plaintiff's campaign-of-harassment claim and therefore does not exhaust it. Id. at 19.

---

[14] Wis. Admin. Code §DOC 310.09(3)(e) (2017).

12

It is undisputed that the plaintiff did not file an appeal of the dismissal of his Inmate Complaint No. GBCI-2018-11258. That inmate complaint does not exhaust the plaintiff's second retaliation claim against Yang. The plaintiff maintains, however, that he exhausted his campaign-of-harassment claim against Yang with Inmate Complaint No. GBCI-2018-13516. Dkt. No. 58 at 10.

The plaintiff's second retaliation claim is based on allegations that after the plaintiff filed this case, he was moved to the South Cell Hall and Yang began harassing him. Dkt. No. 28 at 5-6. Yang allegedly ordered the plaintiff to the top bunk for no reason, placed him in TLU and called the plaintiff "homophobic names (fags, punk, gump) which has created safety problems for him[.]" Id. While the plaintiff's unexhausted inmate complaint (GBCI-2018-11258) includes the allegations that Yang ordered the plaintiff to the top bunk, placed him in TLU and called him homophobic names, Inmate Complaint No. GBCI-2018-13516 also includes allegations that Yang retaliated against the plaintiff by calling him "gay" and by telling other inmates he was gay, which became a safety issue for the plaintiff. That complaint put the prison officials on notice of the plaintiff's claim that Yang was retaliating against him for complaining about Yang's alleged assault. See Schillinger, 954 F.3d at 995-96. The court rejects the defendants' argument that Inmate Complaint No. GBCI-2018-13516 does not relate to the plaintiff's second retaliation claim against Yang.

The defendants contend that, even if GBCI-2018-13516 is related to the plaintiff's campaign-of-harassment claim, the claim still is not exhausted

13

because the plaintiff did not appeal the dismissal of the complaint. Dkt. No. 48 at 19. The plaintiff responds that the dismissal of Inmate Complaint No. GBCI-2018-13516 with the modification that it be further processed under the applicable personnel rules gave him the resolution he sought at the time and, therefore, that he exhausted the claim. Dkt. No. 58 at 10. In his supplemental reply, the plaintiff acknowledges that when GBCI-2018-13516 was dismissed, he was informed of the DOC policy that requires inmates dissatisfied with a decision to file an appeal within fourteen days. Dkt. No. 66 at 5. The plaintiff says that a security supervisor contacted him after the dismissal, the matter was revisited and an investigation was conducted to resolve the matter. Id. The plaintiff states that the grievance policy does not require him to appeal a favorable decision and that succeeding through informal channels met the exhaustion requirement. Id.

Again, there is no dispute that the plaintiff did not file an appeal of the dismissal of Inmate Complaint No. GBCI-2018-13516. The court cannot conclude, however, that the plaintiff was required to appeal the dismissal to the corrections complaint examiner. The ICE (institution complaint examiner) Report on GBCI-2018-13516 provides the following Summary of Facts:

> Inmate Lobley complains that Sgt. Yang tells other inmates that Lobley is gay. He states that he was jumped in the cell hall because Sgt. Yang told the inmate that Lobley was putting his name into some gay stuff.
>
> Inmate Lobley was provided with an explanation of DAI Policy 310.00.01. In addition to that, the provision of DOC 303.32, Wis. Adm. Code, were also provided. He was also informed that, because the investigative process is regulated by state law (which protects the privacy and due process rights of staff) no further information

14

would be given to him. Inmate Lobley chose to pursue the complaint and provided a detailed written description of the events he claimed happened. Based on that statement and the sensitive nature of this incident, it is recommended this complaint be dismissed, with the modification that it be further processed pursuant to the applicable personnel rules and agreements pursuant to DAI Policy 310.00.01. Consequently, no further action will be taken by this office.

Dkt. No. 49-5 at 2. The reviewing authority, Warden Eckstein, dismissed the plaintiff's inmate complaint on July 2, 2018. Id. at 4. Based on DAI Policy 310.00.01, if the Warden/designee determines an investigation of alleged staff misconduct is warranted, the following shall occur:

1. The ICE shall enter a recommendation to the Warden/designee for the complaint to be dismissed and further processed pursuant to the applicable personnel rules, citing either DAI Policy 310.00.01 or Executive Directive 72.
2. The Warden/designee enters a decision on the complaint removing it from the ICRS and thus waiving the inmate's confidentiality rights in accordance with Wisconsin Administrative Code s. DOC 310.16(4).
3. The inmate shall be notified of the Warden/designee's decision consistent with Wisconsin Administrative Code s. DOC 310.11(1).
4. The complaint shall be removed from the ICRS pending an investigation to be conducted by a supervisor.
5. The investigation process is regulated by state law which protects the privacy and due process rights of staff and no further information shall be given the complainant.

Dkt. No. 49-4 at 2.

The plaintiff says that he did not file an appeal because he was satisfied with the result of his inmate complaint. Based on the plaintiff's inmate complaint, a confidential investigation was conducted and the ICE Report advised that he would not be provided with any information about the investigation. The plaintiff was provided with a copy of DAI 310.00.01 which states that a complaint subject to an internal investigation is "removed from

15

the ICRS pending an investigation to be conducted[.]" Dkt. No. 49-4 at 2. In the defendants' brief in support of their motion for summary judgment, they state that the plaintiff's inmate complaint was internally investigated *after* the plaintiff received written notice of the dismissal of his inmate complaint. Dkt. No. 48 at 7. It appears that while the plaintiff was instructed to appeal his dismissed complaint to the corrections complaint examiner in order to exhaust his administrative remedies, he also received information that his complaint had been removed from the ICRS process pending an ongoing investigation. Moreover, the plaintiff states that the later investigation to resolve the matter gave him the resolution he was seeking. Dkt. No. 58 at 10.

A prisoner is not required to exhaust administrative remedies when those remedies are not "available" to him during the relevant exhaustion period. Kaba, 458 F.3d at 684. Administrative remedies are unavailable when a prison official does not respond to a properly filed grievance or uses affirmative misconduct to prevent a prisoner from exhausting through "machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1860 (2016); see also Dole, 438 F.3d at 809 (citations omitted); Thomas v. Reese, 787 F.3d 845, 847 (7th Cir. 2016) (finding administrative remedies were unavailable to inmate who was told numerous times by prison staff that he could not have grievance form). When "prison officials mislead [a prisoner] into thinking that . . . he has done all he needed to initiate the grievance process," then the administrative remedy is legally unavailable. Pavey v. Conley, 663 F.3d 899, 906 (7th Cir. 2011).

16

Case 2:18-cv-00812-PP-NJ    Filed 09/29/20    Page 16 of 17    Document 69

The defendants have not demonstrated that ICRS administrative remedies were available to the plaintiff after the institution complaint examiner recommended dismissal of his complaint. Thus, the court will deny the defendants' motion for summary judgment as to the plaintiff's campaign-of-harassment retaliation claim against Yang.

**III. Conclusion**

The court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment on plaintiff's retaliation claims on exhaustion grounds. Dkt. No. 47. The court **GRANTS** the motion as to the plaintiff's retaliation claims against Cushing and Cole, and his first retaliation claim against Yang. The court **DENIES** the motion as to the plaintiff's second retaliation claim against Yang.

The court **DISMISSES** defendants Cushing and Cole.

The court **ORDERS** that the deadline for the completion of discovery on the merits of the plaintiff's remaining excessive force and retaliation claims is **EXTENDED** to the end of the day on **December 31, 2020** and the deadline for filing dispositive motions is **EXTENDED** to the end of the day on **January 29, 2021.**

Dated in Milwaukee, Wisconsin this 29th day of September, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**