UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DEANGELO D. LOBLEY,

                Plaintiff,

v.                                      Case No. 18-cv-812-pp

TOUKAO YANG,

                Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 72), GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 74) AND DISMISSING CASE**

---

      Plaintiff Deangelo D. Lobley, who is incarcerated at Green Bay Correctional Institution, filed this case alleging that the defendants violated his constitutional rights. Dkt. No. 1. On September 29, 2020, the court granted in part the defendants' motion for partial summary judgment on exhaustion grounds, dismissing the plaintiff's retaliation claims against former defendants Lt. Daniel Cushing and Michael Cole and one of his retaliation claims against defendant Toukao Yang. Dkt. No. 69. The plaintiff's excessive force claim and his other retaliation claim against defendant Yang remain. The parties have filed cross-motions for summary judgment on the remaining claims. Dkt. Nos. 72, 74. The court will deny the plaintiff's motion, grant the defendant's motion, and dismiss the case.

**I.    Facts[1]**

The plaintiff has been confined at Green Bay since July 2013. Dkt. No. 76 at ¶1; Dkt. No. 81 at ¶2. The defendant was a correctional officer from April 2017 to June 2018 and a correctional sergeant from June 2018 to winter 2019. Dkt. No. 76 at ¶2. Green Bay is an adult, male, maximum-security institution. Id. at ¶3.

The plaintiff has alleged an Eighth Amendment excessive force claim and a First Amendment retaliation claim. Dkt. No. 76 at ¶4. Specifically, the plaintiff claims that the defendant used excessive force when he slapped or slammed the plaintiff's arm after the plaintiff reached into the secured workstation. Id. The plaintiff claims that the defendant retaliated against him by waging a "campaign of harassment" because the plaintiff complained about and filed this lawsuit against the defendant. Id.

**A.    Facts related to excessive force claim**

The incident giving rise to the plaintiff's excessive force claim occurred on April 28, 2017. Dkt. No. 76 at ¶5. That day, the defendant worked as the extra officer in the south cell hall's secured workstation, where he monitored the security surveillance cameras and operated the secured entrances to the south cell hall. Id. at ¶¶6-8. For safety and security reasons, inmates may not enter or reach into the secured workstation. Id. at ¶9. For example, there may be

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

2

confidential or sensitive materials in the workstation, and several items could be used as weapons or for self-harm. Id. at ¶10.

Around 3:00 p.m. on April 28, the plaintiff reached into the secured workstation. Dkt. No. 76 at ¶11. According to the defendant, the plaintiff reached his entire arm, from his fingers to his shoulder, into the secured workstation. Id. at ¶12. According to the plaintiff, he reached somewhere from a few inches past his wrist to halfway between his fingertips and elbow into the secured workstation. Id. at ¶13. The plaintiff says he reached into the secured workstation to return his pass in the basket there, which required him to reach his hand into the station. Id. at ¶14; Dkt. No. 81 at ¶3.

An inmate receives a pass so he can attend events such as going to the library, social services or psychological services. Dkt. No. 76 at ¶¶15-16. Once an inmate completes his event, he returns his pass to a marked basket located at the front of the secured workstation. Id. at ¶¶18-20. An inmate would have needed to reach only from his fingertips to a few inches in front of his wrist to place his pass in the basket. Id. at ¶21. An inmate would not need to reach past his wrist to place his pass in the basket at the workstation. Id. at ¶22.

Based on how far the plaintiff reached his arm inside the workstation, the defendant believed he was trying to grab items within the plaintiff's reach such as a stapler, keyboard, computer monitor, scissors and OC spray. Id. at ¶¶23-24. The defendant did not know what the plaintiff was reaching for and felt concerned that the plaintiff may damage those items or use them as weapons. Id. at ¶¶24-25. According to the defendant, he loudly ordered the

3

plaintiff to remove his arm from the workstation, but the plaintiff did not remove his arm. Id. at ¶27. The plaintiff disputes that the defendant ordered him to remove his arm. Id. at ¶28. According to the defendant, because the plaintiff ignored the defendant's directive and because the plaintiff had reached into the workstation, he attempted to gain control of the situation by making a downward movement at the plaintiff's arm to stop the plaintiff from taking anything. Id. at ¶29. The plaintiff says the defendant smacked his arm, specifically making contact with the part of his arm that is a couple of inches up from his wrist and down from his elbow. Id. at ¶30; Dkt. No. 81 at ¶4.[2]

After the defendant made contact, the plaintiff removed his arm from the secured workstation and started yelling that the defendant had assaulted him. Dkt. No. 76 at ¶31. According to the defendant, the plaintiff yelled, "You cannot touch me like that, that is considered assault and I am writing you up! You are going to regret that! Where is the sergeant?! I want a white shirt now!" Id. at ¶32. The plaintiff admits that he probably yelled, that he used an "angry tone" after the slap and that he asked to speak with the sergeant. Id. at ¶¶33-34. According to the defendant, the plaintiff yelled so loudly that Sergeant John Lannoye came from the other side of the cell hall to speak with the plaintiff. Id. at ¶36. According to the plaintiff, Lannoye was standing "right across by the door from the cage hall," so he and another inmate who was present during the incident (Michael Moffet) approached Lannoye to complain about what had

---

[2] For purposes of summary judgment, the defendant agrees to call the contact a smack or slap and agrees with the plaintiff's description of where he made contact with the plaintiff's arm. Dkt. No. 76 at ¶30.

4

happened. Id. at ¶37. Either way, Lannoye spoke with the plaintiff away from the workstation as the defendant continued with his normal job duties. Id. at ¶¶38, 40.

Lannoye instructed the plaintiff and Moffet to return to their cells. Dkt. No. 76 at ¶41. According to the defendant, Moffet complied and returned to his cell, but according to the plaintiff, both he and Moffet refused to return to their cells. Id. at ¶42. The plaintiff says he refused to return to his cell until he met with a supervisor. Id. at ¶43. Lannoye calmed the plaintiff and called for a supervisor. Id. at ¶44; Dkt. No. 81 at ¶5. Lieutenant Daniel Cushing responded, spoke with the plaintiff and ultimately convinced him to return to his cell. Dkt. No. 76 at ¶45.

Once the plaintiff returned to his cell, an officer arrived and photographed his arm. Dkt. No. 76 at ¶46. The plaintiff felt a sting and developed redness and a bruise from the smack and from hitting his arm on the secured workstation while removing it. Id. at ¶47. The plaintiff did not submit any health service requests for medical attention and at his deposition, he could not remember if he verbally asked for medical attention. Id. at ¶48. The stinging and redness stopped by the next day. Id. at ¶49. The plaintiff does not have any permanent injuries from this incident. Id. at ¶50.

B. Facts related to retaliation claim

The plaintiff filed an amended complaint alleging that the defendant retaliated against him after he filed complaints and after he filed this lawsuit. The plaintiff says the defendant retaliated against him by ordering him to the

5

top bunk in his cell. Dkt. No. 76 at ¶53. The plaintiff suggests that this happened on May 20, 2018, when he was moved to the south cell hall. Id.; Dkt. No. 73 at ¶11.

The unit sergeant, not the defendant, assigns an inmate to either the top or bottom bunk in a cell. Dkt. No. 76 at ¶¶54, 56. The plaintiff's bed assignments show he moved to the south cell hall on May 18, not May 20, 2018. Id. at ¶59. His bed assignments also show that he was assigned to the top bunk on May 18 and that he had a cellmate. Id. at ¶¶60-61. The defendant did not work at the prison on May 18 and he did not make the plaintiff's cell assignment on that date. Id. at ¶62. The defendant does not remember a time where he ordered the plaintiff to the top bunk in a cell. Id. at ¶57. If staff had assigned the plaintiff to a top bunk, however, the defendant would have instructed the plaintiff to reside in the assigned top bunk. Id. at ¶58.

The plaintiff says the defendant retaliated against him by calling him gay in front of other inmates. Dkt. No. 76 at ¶63. The defendant says he did not know the plaintiff was gay and that, even if he had known, he would not have told inmates because it could have jeopardized their safety, the defendant's safety or the safety and security of the institution. Id. at ¶¶64-66.

The defendant did not learn about the plaintiff's inmate complaints GBCI-2017-11396, GBCI-2018-11258, and GBCI-2018-13516, until "now," when he learned about them from the Wisconsin Department of Justice.[3] Dkt.

---

[3] The court assumes that "now" is January 29, 2021, when the defendant signed his declaration. Dkt. No. 77.

No. 76 at ¶68. Institution complaint examiner Alan DeGroot did not tell the defendant about GBCI-2017-11396, GBCI-2018-11258 or GBCI-2018-13516. Id. at ¶69. The defendant first learned that the plaintiff complained that he called the plaintiff gay on July 5, 2018, when he was interviewed about the plaintiff's Prison Rape Elimination Act (PREA) complaint against him. Id. at ¶70. The defendant did not learn about this lawsuit until January 28, 2019,when he received an email from the Wisconsin Department of Justice with the complaint and screening order. Id. at ¶71. The defendant says that even if he had known about the plaintiff's complaints and lawsuit, he would not have retaliated against him for filing those things. Id. at ¶72.

**II.    Analysis**

    A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.     Excessive Force Claim

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits "unnecessary and wanton infliction of pain" on prisoners. Hudson v. McMillian, 503 U.S. 1, 5 (1992). In cases involving the use of excessive force, the question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. Factors for courts to consider in determining whether the use of force was wanton and unnecessary include "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Often circumstances require prison officials to balance the need "to maintain or restore discipline" with using force and the risk of injury to

8

inmates. Hudson, 503 U.S. at 6. Both situations require officials to act quickly and decisively. Id. Likewise, both implicate the principle that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. (internal citations and quotations omitted.) A "prisoner need not show a 'significant injury' in order to have a good claim under the [E]ighth [A]mendment, if a guard inflicted pain maliciously or sadistically." Guitron v. Paul, 675 F.3d 1044, 1046 (7th Cir. 2012) (citing Hudson, 503 U.S. at 7).

The parties agree that the plaintiff reached into the secured workstation. And while the parties dispute how far he reached into the workstation, the plaintiff admits that he reached somewhere from a few inches past his wrist to halfway between his fingertips and elbow, which means that he reached farther into the workstation than necessary to return his pass. The defendant, who believed the plaintiff might grab items inside the workstation, which included a stapler, keyboard, computer monitor, scissors and an OC holster, slapped the plaintiff's arm and the plaintiff pulled it away. The plaintiff felt a sting and he developed redness and a bruise from the smack, and from hitting his arm on the workstation while removing it. The sting and redness had stopped by the next day.

According to the plaintiff, after the incident, Lieutenant Cushing told him he was being placed in the restrictive housing unit for attempting to reach into the officer station to steal a bag of chips. Dkt. No. 81 at ¶6; Dkt. No. 80 at 3.

9

The plaintiff states that, while there may be circumstances that require an officer to use force, administrative policy does not permit officers to use force on an inmate for attempting to commit a theft and, in particular, for attempting to steal a bag of chips. Dkt. No. 72 at 4. The plaintiff has offered no evidence to support his assertion that the defendant slapped him because he tried to steal a bag of chips. Even if the defendant had told Cushing that the plaintiff tried to steal a bag of chips (and the record does not support that he did), the plaintiff still reached his arm into a secured workstation. Finally, while the record does not support a finding that the defendant violated administrative policy by slapping the plaintiff's arm, even if his actions had violated policy, a violation of prison policy, standing alone, does not state a claim for a constitutional violation in a civil rights case. See Williams v. Mierzejewski, 401 F. App'x 142, 144 (7th Cir. 2010) (citing Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010); Domka v. Portage Cty., Wis., 523 F.3d 776, 784 (7th Cir. 2008)).

Nor has the plaintiff provided any evidence that the defendant slapped him for the purpose of being malicious or sadistic. There is no dispute that the plaintiff reached further into the workstation than was necessary to return his pass. The defendant has asserted that he slapped the plaintiff's arm out of a concern for what the plaintiff might be trying to do with items in the workstation. Without evidence that the defendant acted to inflict pain maliciously or sadistically, the plaintiff is not entitled to relief.

The record does not support a finding the defendant used excessive force when he slapped the plaintiff's hand away after the plaintiff reached into the secured workstation. The court will grant the defendant's motion for summary judgment as to the plaintiff's excessive force claim.

### C. Retaliation Claim

The plaintiff contends that the court should grant him summary judgment on his retaliation claim. Dkt. No. 72 at 6. He says that after he made a complaint about the defendant's misconduct and filed this case, the defendant retaliated against him. Id. The plaintiff states that on May 20, 2018, he transferred to the South Cell Hall where the defendant worked and when he entered his assigned cell, he selected the lower bunk. Id. According to the plaintiff, the defendant singled him out and demanded that he move to the top bunk and when the plaintiff asked to speak to a supervisor about the suspected retaliation, he was placed in the restrictive housing unit. Id. The plaintiff also says that the defendant harassed him by telling other inmates the plaintiff wanted to have sex with them which incited an assault on the plaintiff, which he described in complaint GBCI-2018-13516. Id. The plaintiff states that the defendant's actions started after the plaintiff made complaints and filed this lawsuit. Id.

To establish a *prima facie* case of unlawful retaliation, a plaintiff must show: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in

11

the defendant's decision to take the retaliatory action. See Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020). If the plaintiff makes this *prima facie* showing, the defendant must show that the adverse action would have occurred anyway. Mays v. Springborn, 719 F.3d 631, 634 (7th Cir. 2013); see also Greene v. Doruff, 660 F.3d 975, 979 (7th Cir. 2011) (if inmate meets all three elements, burden shifts to show that officers would have taken the same actions "even in the absence of protected conduct"). If the defendants meet this burden, then the plaintiff must show that their proffered reason was pretextual—in other words, a lie—and that the real reason was retaliatory animus. Thayer v. Chiczewski, 705 F.3d 237, 252 (7th Cir. 2012).

The plaintiff has a First Amendment right to complain about prison conditions. See Watkins v. Kasper, 599 F.3d 791, 797 (7th Cir. 2010). He has satisfied the first element of a retaliation claim; he exercised his First Amendment rights by filing the inmate complaints and this lawsuit. The defendant contends that the plaintiff cannot satisfy the second and third elements of a retaliation claim based on his cell assignment allegations. The court agrees. The plaintiff has not explained why he preferred the bottom bunk and, without more, the court cannot conclude that the defendant's direction to the plaintiff to move to the top bunk (where the unit sergeant had assigned him) would deter future the plaintiff from future exercises of his First Amendment activity. See Douglas, 964 F.3d at 643. Moreover, while the plaintiff states that the *defendant demanded* he move to the top bunk on May 20, 2018, the record shows that the *unit sergeant assigned* the plaintiff to the

12

top bunk on May 18, 2018. A reasonable factfinder could not conclude that the defendant retaliated against the plaintiff by directing him to an upper bunk to which he already had been assigned. The defendant does not remember telling the plaintiff to go to the upper bunk but, assuming he did, a reasonable factfinder could not conclude that he did so with a retaliatory motive because the plaintiff already had been assigned to the upper bunk.

Turning to the allegations regarding homophobic slurs, the defendant concedes that being called gay in front of other inmates could deter future First Amendment action, thereby satisfying the second element of a retaliation claim. But while the defendant denies using homophobic slurs regarding the plaintiff, the dispute over whether he did so is immaterial; even assuming that the defendant called the plaintiff homophobic names or made homophobic comments about the plaintiff, the timing of the alleged name-calling shows that the defendant could not have done it in retaliation for the plaintiff's complaints and for filing this case.

The secured workstation incident took place on April 28, 2017. The plaintiff filed this case on March 25, 2018. Almost three months later, on June 20, 2018, he filed offender complaint GBCI-2018-13516, alleging that the defendant used homophobic slurs against him. The plaintiff filed the amended complaint adding his retaliation claim against the defendant on February 14, 2019. The defendant first learned that the plaintiff had filed a complaint alleging that he called the plaintiff homophobic names on July 5, 2018—after the June 20, 2018 inmate complaint the plaintiff filed. The defendant learned

the plaintiff had filed this lawsuit on January 28, 2019. And the defendant did not learn that the plaintiff filed inmate complaints related to his allegations in this case until he learned about them from the Wisconsin Department of Justice in January 2021. The plaintiff has not provided specific information about the timing of the alleged homophobic name-calling, but it had to have been before the plaintiff filed his June 20, 2018 inmate complaint in which he raised the allegations. The defendant did not know about the inmate complaints or this lawsuit during the time of the alleged retaliatory name-calling, *i.e.*, before June 20, 2018.

A reasonable jury could not conclude that the defendant retaliated against the plaintiff. The court will therefore grant the defendant's motion for summary judgment as to plaintiff's retaliation claim.

### III. Conclusion

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 72.

The court **GRANTS** the defendant's motion for summary judgment. Dkt. 75.

The court **DISMISSES** this case. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this

deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 30th day of June, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**